# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM M. PICKARD, III, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:19-cv-02119-JHE |
| SERRA MAZDA, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Plaintiff William M. Pickard, III ("Pickard" or "Plaintiff"), proceeding *pro se*, filed this action on December 27, 2019, alleging violations of the Truth in Lending Act ("TILA") in connection with the purchase of an automobile from Defendant Serra Mazda. (Doc. 1). The undersigned ordered Pickard to file an amended complaint, (doc. 4), and, after several attempts to do so and further orders to amend, (docs. 5, 6, 7 & 8), Pickard filed his Third Amended Complaint, (doc. 9), the operative pleading in this action.

Defendants Serra Mazda, Barry Brown ("Brown"), Jerry Cheng ("Cheng"), T. Dwayne Currier ("Currier"), Roberto Rodriguez ("Rodriguez"), Steve Serra ("Serra"), Serra Toyota, and Steve Serra Auto Group ("SSAG") have moved to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(5) for insufficient service of process and 12(b)(6) for failure to state a claim. (Doc. 15). That motion is fully briefed. (Docs. 31, 34 & 35).[2] Pickard has also moved for leave

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 27).

[2] Doc. 35, filed by Pickard, is styled as a "Motion for Judicial Notice." The document recaps the evidence and argument previously put forward by the parties. (*See* doc. 35). The

to file his Fourth Amended Complaint, (doc. 30), which is also fully briefed, (docs. 36 & 39).[3] For the reasons stated more fully below, the motion to dismiss is **GRANTED** and the motion for leave to amend is **DENIED**.

## I. Standards of Review[4]

### A. Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

undersigned construes this as a motion for leave to file a sur-reply. It is **GRANTED IN PART** to the extent that the undersigned has considered the arguments raised in the motion, but **DENIED** as to any request that the undersigned take judicial notice of evidence outside the evidence permissible for consideration under the legal standards applicable to the motions at issue here.

[3] Docs. 37, 38 & 39 are all versions of Pickard's reply in support of his motion for leave to amend. The undersigned considers the last of these, which includes an additional citation not present in the original brief and an exhibit not present in either prior version, to be the version of the reply brief Pickard wishes the undersigned to consider.

[4] As discussed below, the undersigned concludes the Third Amended Complaint is due to be dismissed under Rule 12(b)(6) and leave to amend is due to be denied. Accordingly, the undersigned does not reach Defendants' arguments under Rule 12(b)(5).

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Further, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

### B. Leave to Amend Under Rule 15

The court will "freely grant" a motion to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). The court's discretion in deciding whether to grant or deny a motion to amend, however, is not unlimited. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1110 (11th Cir. 1996)

(citing *Espey v. Wainwright*, 734 F.2d 748 (11th Cir. 1984); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981)).  A district court should allow a plaintiff to amend unless there is a "substantial countervailing reason." *Id.*  Such "substantial countervailing reasons" include: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment.  *Id.* (citing *Nolin v. Douglas Cnty.*, 903 F.2d 1546, 1550 (11th Cir. 1990)).

"The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *B.D. Stephenson Trucking LLC v. Riverbrooke Capital Partners, LLC*, No. 06-0343-WS-M, 2006 WL 2772673, at *6 (S.D. Ala. Sept. 26, 2006) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *see also Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996).

## II. Background

### A. Facts[5]

On December 28, 2018, Pickard responded to an advertisement by Serra Mazda.  (Doc. 9 at ¶ 13).  Brown, a sales consultant, showed Pickard several vehicles.  (*Id.*).  Pickard returned to Serra Mazda at 2:00 p.m. the next day, and Brown referred Pickard to Cheng.  (*Id.* at ¶ 14).  Cheng showed Pickard several vehicles, including a 2016 Toyota Camry.  (*Id.*).  Pickard negotiated a

---

[5] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman*, 225 F.3d at 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  These facts are generally taken from the Third Amendment Complaint, which contains factual allegations substantively identical to those in the proposed Fourth Amended Complaint.

$15,500.00 or less sales price for the vehicle, with a down payment of $1,000.00 and a consumer financed payment of $350.00 or less per month. (*Id.* at ¶ 15). After conferring with Currier, Cheng informed Pickard that his offer had been accepted and that documents for the transaction were being prepared. (*Id.* at ¶ 16).

The documents were not ready until 9:30 p.m., when Currier disclosed the Bill of Sale to a weary Pickard. (*Id.* at ¶¶ 17-18). The Bill of Sale stated a sales price of $17,694.00. (*Id.* at ¶ 19; doc. 9 at 10 ("Compl. Exh. A")). Currier also stated he had added $3,000.00 for an extended warranty he believed Pickard had requested. (*Id.* at ¶ 20). When Pickard informed Currier that he had not requested an extended warranty, Currier stated that the warranty could not be refunded. (*Id.*). The Bill of Sale further included delivery fees of $699.00, which Pickard had not agreed to. (*Id.* at ¶ 21; Compl. Exh. A). The Bill of Sale also indicates Pickard's monthly payment would be $546.74, which Currier told Pickard was the best consumer loan he could offer. (*Id.* at ¶ 25). Currier provided Pickard with rate sheets from credit unions that would result in a monthly payment of $350.00 per month or less. (*Id.*; doc. 9 at 11-14 ("Compl. Exh. B")). However, because the cost of the vehicle was high with the $3,000.00 extended warranty included, refinancing was not possible. (*Id.* at ¶ 26).

Currier gave Pickard the information for the extended warranty company who would refund the cost of the warranty and told Pickard the delivery fees would be refunded by check. (*Id.* at ¶ 22). Currier confirmed that Serra Toyota would process the refunds. (*Id.*). Currier informed Pickard that the rest of the loan documents were consistent with the disclosures on the Bill of Sale, and Pickard executed the documents. (*Id.* at ¶ 27).

Defendants have attached a copy of the Retail Installment Sale Contract (the "Contract") from the transaction, which includes a box labeled "FEDERAL TRUTH-IN-LENDING DISCLOSURES."[6] (Doc. 15-1). That box is reproduced below:

| FEDERAL TRUTH-IN-LENDING DISCLOSURES | | | | |
|---|---|---|---|---|
| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $1,000.00 is |
| 18.95 % | $13,944.63 | $22,140.21 | $36,084.84 | $37,084.84 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | 546.74 | Monthly beginning 02/12/19 |
| | N/A | |

Or As Follows:

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of $ 18.00 or 5 % of the part of the payment that is late, whichever is greater, not to exceed $100.00.
Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

---

[6] Ordinarily, a court may not consider materials outside the complaint in addressing a motion under Rule 12(b)(6) without converting it to a motion for summary judgment. FED. R. CIV. P. 12(d). However, a court may properly consider a document incorporated by reference into the complaint in addressing a motion under Rule 12(b)(6), whether or not that document is actually attached to the complaint. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). A document is incorporated by reference into the complaint when it "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, although Pickard has included only the Bill of Sale, the allegedly deficient TILA disclosures are referenced repeatedly in the Third Amended Complaint, (*see, e.g.,* doc. 9 at ¶¶ 19, 21, 24), and the sale of the vehicle forms the sole basis for the causes of action asserted in the Third Amended Complaint. Further, Pickard does not challenge the authenticity of the document. Thus, the undersigned may consider the contract attached to the motion to dismiss without converting the motion.

(*Id.* at 2). Below the TILA disclosures, the Contract indicates the cash price for the vehicle is $18,475.71, with the $1,000.00 down payment reducing the "Unpaid Balance of Cash Price" (the "Unpaid Balance") to $17,475.71. (*Id.* at 2). To that price, the disclosure adds a total of $4,664.50 in "Other Charges Including Amounts Paid to Others on Your Behalf" (the "Other Charges"): an optional gap contract at $949.00, a "DOC FEE" of $699.00 to Serra Mazda, and a "SERVICE CONTRACT" of $3,000.00 to Fidelity. (*Id.* at 2-3). The Contract indicates that the amount to be financed is $22,140.21, adding together the Other Charges and the Unpaid Balance. (*Id.* at 3). The contract indicates that "This contract contains the entire agreement between you and us relating to the contract. Any changes to this contract must be in writing and we must sign it. No oral changes are binding." (*Id.*). Pickard's signature follows these statements. The Contract further states:

> You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You confirm that before you signed this contract and any dispute resolution agreement, we gave them to you and you were free to take them and review them. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side before signing below. You confirm that you received a completely filled-in copy of these documents when you signed them.
>
> CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

(*Id.*). Pickard's signature appears again after this portion. (*Id.*).

Two weeks after purchasing the Camry, Pickard met with Currier. (Doc. 9 at ¶ 28). Currier stated that the refunds were being processed. (*Id.*). Currier informed Pickard that Serra Toyota processed his credit application and loan extension, and that Serra Toyota would process both refunds. (*Id.* at ¶ 29). Pickard was later told that Steve Serra refused to refund the delivery fees and that Serra Toyota declined to process the refund. (*Id.* at ¶ 22). The $3,000.00 extended warranty was eventually refunded. (*Id.* at ¶ 26).

Pickard inquired again about his refunds but was informed that Currier no longer worked for Serra Mazda, SSAG, or any of its affiliates. (*Id.* at ¶ 31). Instead, he was referred to Rodriguez. (*Id.*). Rodriguez indicated he was unfamiliar with Currier's disclosures, and Pickard examined the documents more closely. (*Id.* at ¶¶ 31-32). Further examining the Bill of Sale, Pickard noticed numbers in the pre-printed text below the line items:

| DELIVERY FEES | 8040 | | 699.00 |
|---|---|---|---|
| TOTAL SELLING PRICE | | | 19,191.21 |
| | | | |
| DEPOSIT OR DOWN PAYMENT | 2110 | + | 1,000.00 |
| REBATE APPLIED ON DELIVERY | 2240 | + | N/A |
| | | + | |
| TOTAL USED CAR ALLOWANCE | | | N/A |
| PAYOFF ON TRADE-IN | 3010 | − | N/A |
| EQUITY | | | N/A |
| FINANCING   66  MOS.    545.74 PER MO. | | | 36,084.00 |
| TOTAL SETTLEMENT | | | 22,140.21 |

...s invoice are those made by the manufacturer. ...isclaims all warranties, either express or implied, ...y or fitness for a particular purpose, and neither ...ume for it any liability in connection with the sale

3,000.00

(Compl. Exh. A).[7] These indicate the total settlement of $22,140.21 and an unexplained $3,000.00 amount. (*Id.*).

### B. Procedural History

As noted above, Pickard filed this action on December 27, 2019. (Doc. 1). Along with his complaint, Pickard moved for leave to proceed *in forma pauperis*. (Doc. 2). The undersigned granted that motion, and reviewed the complaint as required by 28 U.S.C. § 1915(e)(2)(B). (Doc.

---

[7] The "arrows pointing to the concealed disclosures" were added by Pickard as demonstration aids. (Doc. 9 at ¶ 24).

4). Because the complaint listed Serra Toyota as a defendant but included no factual allegations regarding it, the undersigned ordered Pickard to file an amended complaint either omitting Serra Toyota or explaining his allegations against it. (*Id.*). Pickard filed an amended complaint on December 30, 2020, (doc. 5), but it also contained no factual allegations against Serra Toyota. The undersigned again ordered Pickard to file an amended complaint. (Doc. 6). Pickard's second amended complaint, (doc. 7), was also deficient. After another order to amend, (doc. 8), Pickard submitted a complaint suitable for service, (doc. 9).

As required by Fed. R. Civ. P. 4(c)(3), the undersigned directed that the Clerk of Court initiate service on the defendants. (Doc. 10). The Clerk issued summons for each defendant and delivered them to the United States Marshals Service for service at the addresses Pickard provided. (Doc. 11).

On February 3, 2020, the summons were returned executed as to Brown, Cheng, Currier, Rodriguez, Serra Mazda, and Serra Toyota. (Doc. 12). On each of those returns, the United States Marshal Deputy or Clerk certified that he or she had "personally served" the respective defendant. (*See id.* at 1, 3, 5, 7, 9 & 11). However, the attachment to each return is a certified mail receipt indicating service by certified mail. (*See id.* at 2, 4, 6, 8, 10 & 12). The same is true for the returns as to SSAG, served on February 5, 2020, (*see* doc. 13), and Steve Serra, served on February 1, 2020, (*see* doc. 14). The signatures on most of the certified mail receipts are illegible, with no printed name, but each illegible signatory (with the exception of the signatories for Cheng and Steve Serra) has checked the box marked "agent." (*See* doc. 12 at 2, 4, 6, 8 & 10). The signatories for Cheng and Steve Serra do not indicate whether they are agent or addressee. (*See* doc. 12 at 12; doc. 14 at 2). The signatory for SSAG is discernable as Lillian Killings. (*See* doc. 13 at 2).

9

On February 20, 2020, all named defendants moved to dismiss. (Doc. 15). That motion is fully briefed, (docs. 31 & 34), as is Pickard's motion for leave to file a fourth amended complaint, (docs. 30, 36 & 39).

### III. Analysis

Pickard's Third Amended Complaint contains two causes of action. The first count asserts violations of TILA and Regulation Z, 12 C.F.R. § 226 *et seq*. (Doc. 9 at ¶¶ 36-37). The second asserts violations of TILA and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. (*Id.* at ¶¶ 38-39).[8] In response to Defendants' motion to dismiss, Pickard's proposed Fourth Amended Complaint abandons the reference to the ECOA in Count II, substituting in its place a general TILA count based on predatory lending against Serra Mazda, Serra Toyota, and SSAG, and adds as Count III a fraudulent misrepresentation count under state law. (*See* doc. 30 at ¶¶ 39-40; doc. 31 at ¶ 24). Because the undersigned concludes the Third Amended Complaint is due to be dismissed under Rule 12(b)(6) and the motion for leave to amend is due to be denied, the undersigned does not reach Defendants' arguments under Rule 12(b)(5).

#### A. Dismissal Under Rule 12(b)(6)

#### 1. Count I — TILA Disclosures

TILA provides a private right of action against "any creditor" who violates the requirements of the statute's "Credit Transactions" section, allowing actual damages as a result of the failure and, with certain limitations, statutory damages. *See* 15 U.S.C. § 1640(a). Specifically, TILA requires that "a creditor or lessor shall disclose to the person who is obligated on a consumer

---

[8] The Third Amended Complaint includes two paragraphs labeled 38, both of which comprise the second cause of action.

10

lease or a consumer credit transaction the information required under this subchapter." 15 U.S.C. § 1631(a). A creditor is required to disclose certain information to a borrower, including the identity of the creditor, the amount financed, the finance charge as both an amount and an APR, and the total sales price. 15 U.S.C. §§ 1631(a)-(b), 1638(a). A "creditor" is defined for purposes of TILA as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence . . . .

15 U.S.C. § 1602(g).

Under the authority of TILA, the Board of Governors of the Federal Reserve has promulgated rules governing, *inter alia*, motor vehicle dealers. 15 U.S.C. § 1604(i); 12 U.S.C. § 5519(a). These rules, found at 12 C.F.R. § 226, are commonly known as "Regulation Z." Regulation Z requires "[t]he creditor" to disclose information such as the identity of the creditor, the amount financed, and the finance charge. 12 C.F.R. § 226.18. It also provides that "[t]he creditor shall make these disclosures . . . clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under [12 C.F.R.] § 226.18." 12 C.F.R. § 226.17(a)(1). The creditor is required to make these disclosures "before the consummation of the transaction." 12 C.F.R. § 226.17(a)(2).

Regulation Z generally applies to

> [. . .] each individual or business that offers or extends credit when four conditions are met:

> (i) The credit is offered or extended to consumers;

(ii) The offering or extension of credit is done regularly;[1]

(iii) The credit is subject to a finance charge or is payable by a written agreement in more than four installments; and

(iv) The credit is primarily for personal, family, or household purposes.

12 C.F.R. § 226.1(c)(1). Mirroring TILA, Regulation Z defines a "creditor" as "[a] person who regularly extends consumer credit[3] that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract."  12 C.F.R. § 226.2(a)(17)(i).

In the Third Amended Complaint, Pickard specifies five ways in which—without differentiating among them—Defendants are alleged to have violated TILA and Regulation Z:[9] (1) falsely presenting the TILA disclosures, including the true selling price of the Camry; (2) "concealing, obscuring, hiding, or otherwise failing to make required disclosures clearly and conspicuously in writing"; (3) "failing to properly identify total property subject to a security interest" (specifically, $3,949.00 in increased total sales price, $3,000.00 in an extended warranty premium, and $699.00 in delivery fees); (4) improperly disclosing the amount financed by improperly including charges in the financed amount; and (5) calculating the APR based on improperly calculated and disclosed finance charges, thereby understating the disclosed APR. (Doc. 9 at ¶¶ 36-37). Defendants contend no defendant but Serra Mazda is a creditor within the meanings of TILA, and Serra Mazda did not violate TILA.

---

[9] For clarity, the remainder of this section refers exclusively to TILA violations, irrespective of whether a particular act violates TILA itself or one of the provisions of Regulation Z.

The following discussion is broken down by groups of defendants: (1) individual defendants, (2) Serra Toyota and Steve Serra Automotive Group, (3) and Serra Mazda.

### a. Individual Defendants — Brown, Cheng, Currier, Rodriguez, and Steve Serra

Defendants contend none of the individuals is a creditor under TILA, pointing to the fact that none of the individuals "regularly extend . . . consumer credit," nor are they "the person to whom the debt arising from the consumer credit transaction is initially payable." (Doc. 15 at 11). In response, Pickard offers no argument to support their liability, focusing instead on the remaining defendants. Therefore, Pickard has abandoned his Count I claims against the individual defendants.[10] *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *6 (N.D. Ala. Jan. 27, 2016); *Boyd v. Daniels*, No. 2:13-CV-354-MEF, 2014 WL 1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, No. CV-13-S-695-NE, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (dismissing claims on motion to dismiss for failure to respond); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (dismissing undefended claims on

---

[10] Pickard's proposed Fourth Amended Complaint alleges that only Serra Mazda, Serra Toyota, and SSAG are creditors for TILA purposes. (*See* doc. 30 at 3, ¶ 12). Although Pickard states that he "could re-assert that [the individual defendants] are indeed liable under the First Cause of Action," (doc. 39 at 2), he has not done so. In any case, neither the relevant documents nor Pickard's factual allegations support that any individual defendant meets either prong of the TILA creditor definition.

13

summary judgment)); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

### b. Serra Toyota and SSAG

Defendants concede that Serra Toyota is an entity that regularly extends consumer credit, but argue that it does not meet the second part of the creditor definition because it is not the entity to whom the Camry-related debt was initially payable. (Doc. 34 at 4-5). Defendants contend SSAG is not a legal entity but instead "merely a trade name for several car dealerships," and that it does not meet either of the two requirements to be a creditor under TILA. (*Id.* at 5).

Pickard argues Serra Toyota is a creditor because it "processed his credit application and loan extending documents." (Doc. 31 at 3). As Pickard notes, (*id.*), the court accepts the allegations in his complaint as true in ruling on a motion to dismiss. However, even if Serra Toyota had some responsibility for processing Pickard's credit application and other documents, neither the Bill of Sale, (doc. 9 at 10), nor the Contract, (doc. 15-1), reference Serra Toyota anywhere. Instead, the entity "to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence" is, unquestionably, Serra Mazda. Pickard offers no support for the proposition that simply processing documents makes a person or entity a creditor under TILA when no debt is payable, initially or otherwise, to that person or entity. Accordingly, Pickard's Count I claims against Serra Toyota are due to be dismissed.

Responding to Defendants' contentions regarding SSAG, Pickard first states that SSAG is a legal entity because counsel has entered a notice of appearance on its behalf. (Doc. 31 at 3). Whether or not this is the case, Pickard's claims against SSAG fail for the same reason that his claims against Serra Toyota fail: even if it was somehow involved in the sale of the Camry, the

face of the evidence shows that the only creditor, for TILA, is Serra Mazda. Pickard asserts that SSAG includes Serra Mazda and that this makes SSAG a joint creditor with Serra Mazda. (Doc. 31 at 3). Even assuming a parent/subsidiary relationship between SSAG and Serra Mazda, the evidence does not reflect that the loan is "initially payable" to SSAG in addition to Serra Mazda. *See, e.g., Mincey v. World Sav. Bank, FSB*, 614 F. Supp. 2d 610, 626 (D.S.C. 2008) (rejecting TILA claim against parent corporation where parent did not independently qualify as a creditor). Pickard's Count I claims against SSAG are due to be dismissed.

### c. Serra Mazda

As to Serra Mazda, each of Pickard's Count I claims relates to failures to disclose matters required by TILA or deficiencies in the disclosures provided in the Bill of Sale. Defendants contend the Contract itself contained TILA disclosures that comply with the relevant regulations, and they were not required to make TILA disclosures exclusively in the Bill of Sale.

In his response, Pickard does not deny that the disclosures in the Contract comply with TILA. Instead, citing *Hardin v. Cliff Pettit Motors, Inc.*, 407 F. Supp. 297 (E.D. Tenn. 1976), he argues that TILA disclosures were necessary on all documents, including the Bill of Sale. (Doc. 31 at 4). *Hardin* is not binding on this court, but in any case it does not support the proposition Pickard advances. In *Hardin*, a borrower negotiated the purchase of a car on May 19, 1975, paid a partial down payment, and executed a partial bill of sale. *Id.* at 298. Sometime afterwards, an agent of the defendant lender completed the credit terms on the bill of sale. *Id*. On May 30, the borrower returned, paid the rest of the down payment, and signed a conditional sales contract and note. *Id*. The parties "stipulated that the conditional sales contract and note executed May 30 contained a full and complete disclosure as required by law." *Id.* at 298. The court considered "[t]he primary question . . . [of] whether defendant was obligated to make the required disclosures

at the time of the May 19 transaction." *Id.* at 299. In other words, the case was about the timing of TILA disclosures (i.e., § 226.17(a)(2)), not whether they needed to be on all of the documents involved. And since the adequacy of the disclosures was conceded by the plaintiff, *Hardin* does not speak to the facts of this case.[11] Pickard provides no other authority for the notion that TILA disclosures were required to also appear on the Bill of Sale when they appear on the Contract, and the undersigned has found nothing to support that.[12]

To the extent that Pickard contends that the information on the Bill of Sale constituted inadequate TILA disclosures, this appears to confuse "TILA disclosures" with "information that must be included in TILA disclosures." The text of § 226.17(a)(1), which requires TILA disclosures to "be grouped together . . . [and] segregated from everything else," undermines Pickard's argument. Even though information subject to TILA disclosure may appear elsewhere

---

[11] In his Motion for Judicial Notice, Pickard attempts to bring *Hardin* back in by arguing that the disclosures on the Contract were not made concurrently with the Bill of Sale because only the Bill of Sale was disclosed to him on the date of the sale. (Doc. 35 at 4-5). But the Contract is dated December 29, 2018: the same date as the Bill of Sale. (*Compare* doc. 9 at 10 *with* doc. 15-1 at 3). And while Pickard states that "no [TILA] disclosures were ever made," (doc. 35 at 5)—presumably meaning that he never received the TILA disclosures—this claim is belied by his signature on the Contract, below the portion indicating that he has received a fully filled-in copy of the Contract and read it. (*See* doc. 15-1 at 3). To the extent Pickard's allegations contradict that he contemporaneously received a copy of adequate TILA disclosures before consummating the sale of the Camry, the court is not required to accept those general allegations as true in the face of a conflicting written exhibit. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

[12] As Defendants point out, there are numerous cases supporting the ordinary circumstance of TILA disclosures appearing in a contract, rather than on a bill of sale. *See Henderson v. Serra Chevrolet, Inc.*, No. 2:09-CV-0545-JEO, 2009 WL 10689135, at *1 (N.D. Ala. Nov. 24, 2009); *In re Cooley*, 362 B.R. 514, 516-17 (Bankr. N.D. Ala. 2007). *See also* What is a Truth-in-Lending Disclosure? When do I get to see it?, Consumer Financial Protection Bureau (Last updated June 8, 2016) ("Note that the TILA disclosure is often provided **as part of the loan contract**, so you may be given the entire contract for review when you ask for the TILA disclosure. You should review it all, paying special attention to the disclosures noted above.") (emphasis added).

16

on loan documents (most obviously, the name of the creditor), the information that is contained in the TILA disclosures themselves is the information that must comply with TILA. Although the typesetting on the Bill of Sale does make it difficult to discern some information about the sale that is required to be disclosed under TILA, that is not the same thing as the TILA disclosures themselves being deficient. Pickard does not contend that the clearly-labeled TILA disclosures on the Contract, which he signed, failed to capture or convey the information required by TILA. Accordingly, Pickard cannot state a claim for a TILA violation premised on inadequate disclosures by Serra Mazda, and his Count I claims to that effect are due to be dismissed.

### 2. Count II — TILA Violations Premised on Violations of the ECOA

The ECOA forbids "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). Defendants contend Pickard has failed to include facts supporting any of these grounds in his complaint. (Doc. 15 at 17-18). Pickard states his amendment would remove this count and substitute a new one that does not reference the ECOA. (Doc. 31 at 7). Accordingly, Pickard has abandoned this claim, and it is due to be dismissed.

### B. Leave to Amend

Defendants argue leave to amend should be denied due to Pickard's previous inadequate complaints. (Doc. 36 at 3-4). However, these were ordered by the court as part of review under 28 U.S.C. § 1915(e)(2)(B), and Defendants were not prejudiced in any way by these inadequacies; as Pickard notes, all of the previous orders to amend took place prior to Defendants' knowledge

of the complaint, (*see* doc. 39 at 2).  Therefore, the undersigned will assess the merits of the motion for leave to amend.

### 1. Count I — TILA Disclosures

For the same reasons the claim is subject to dismissal, it would be futile to allow Pickard to amend his complaint as to Count I.  Therefore, leave to amend is **DENIED** as to that count.

### 2. Count II — TILA Predatory Lending

As for Count II, the proposed Fourth Amended Complaint alleges Serra Mazda, Serra Toyota, and SSAG each "engaged in predatory lending actions by unduly aggressive pursuit of loan recipients, misrepresentation of loan terms, charges, fees, and other acts of consumer fraud in violation of the TILA." (Doc. 30 at 7).  For the same reasons discussed above, Serra Toyota and SSAG are not creditors under TILA with respect to this transaction.  Furthermore, as noted by Defendants, (*see* doc. 34 at 9), there is no cause of action under TILA for predatory lending practices.  Instead, Regulation Z states that TILA is intended to "promote the informed use of consumer credit by requiring disclosures about its terms and cost," but "[t]he regulation does not generally govern charges for consumer credit" except in certain circumstances not present here. 12 C.F.R. § 226.1(b).  Although Pickard contends Defendants are misstating the law, (doc. 35 at 5), he never points to anything to suggest that TILA provides a cause of action for predatory lending practices such as the type he alleges here.  Accordingly, it would be futile to allow the amendment.  Pickard's motion is **DENIED** as to this count.

### 3. Count III — Fraudulent Misrepresentation

The final count in Pickard's proposed Fourth Amended Complaint is a fraudulent misrepresentation claim under Alabama law.  Originally, the court had federal question jurisdiction over this case under 28 U.S.C. § 1331 based on Pickard's TILA claims.  (*See* doc. 9 at 9, ¶ 2).

Because Pickard does not contend (and presumably cannot contend, given the identities of the defendants) the court has diversity of citizenship jurisdiction, the court's jurisdiction over Pickard's state law claims is necessarily based on supplemental jurisdiction under 28 U.S.C. § 1367(a).  Since denying leave to amend as to Counts I and II removes all federal claims in Pickard's proposed Fourth Amended complaint, the court has discretion to decline to extend supplemental jurisdiction to the remaining state law count.  28 U.S.C. § 1367(c).  Because the undersigned would decline to exercise supplemental jurisdiction over Pickard's state law fraudulent misrepresentation claims if they were the only remaining claims, the motion for leave to amend is **DENIED** as to Count III.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (doc. 15), is **GRANTED**, and their alternative motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) is **DENIED AS MOOT**.  Pickard's motion for leave to amend, (doc. 30), is **DENIED**.  A separate order will be entered.

DONE this 5th day of October, 2020.

                                              **JOHN H. ENGLAND, III**
                                              UNITED STATES MAGISTRATE JUDGE